McINTOSH et al. v. MIGUEL DE LARRI-
NAGA S. S. CO.

No. 1335.

District Court, S. D. Texas, at Galveston.
May 27, 1930.

Armstrong & Cranford, of Galveston, Tex., and Barry, Wainwright, Thacher & Symmers, of New York City, for libelant.

Lockhart, Hughes & Lockhart, of Galveston, Tex., for respondent.

### HUTCHESON, District Judge.

This suit raises many interesting questions of law as to the statutes applicable to and determining the rights of the parties assuming that the facts as to negligence are found in favor of plaintiff.

I have carefully read the entire record, and since it seems to me from that reading that it cannot be justly held under the circumstances of this case that the negligence of the ship was the proximate cause of the death, I do not find it necessary to discuss those questions.

Whether it be considered that the ship owed no duty to the deceased under the circumstances, or that if it owed a duty, it did not breach it, or that if it owed a duty the proof does not show want of due care, or whether it be considered that if it owed the duty and if it was careless in the performance of it, the proximate cause of the injury was the deceased's own act in deliberately choosing a dangerous course, it seems to me the facts wholly fail to sustain his right of recovery.

Here is a case of a man in full charge of the work and the workmen on the ship, familiar with all of the conditions generally surrounding such work, having worked on board himself as foreman and director of work on ships in the same port for many years; the evidence showing that he had worked on this ship for hours before the accident occurred, coming on board in broad daylight. Under these circumstances, it does not seem to me that the ship owed the duty to the deceased to give him any special advice as to the condition of the hatches around and through which he was to have his men work, but that it was his own duty on behalf of his men to look the situation over and thoroughly canvass it before putting them to work.

Plaintiff insists that the proof shows that the trimming hatches were open when the deceased and his men went aboard the ship and that this affirmatively establishes the ship's negligence.

In the first place, I do not think plaintiff has sustained the burden of affirmatively showing that the hatches were open when the men went on board the ship. While there is some evidence to that effect, I think that the plaintiff's evidence does not clearly preponderate on that issue.

But if I should find, as plaintiff claims, that the trimming hatches were open when the men went aboard the ship in broad daylight, it seems perfectly clear to me that this was a patent and obvious condition which it was the duty of the deceased to remedy, if he wanted them closed before he put the men to work, and that in the state of the proof nothing appears but that it was his desire and intention that they should remain open.

Upon the point that the evidence overwhelmingly shows that the deceased ought not to recover under the operation of the doctrine volenti non fit injuria, attention should be called to the fact that everybody testified that at the time of the falling from the deck the ship was badly lighted. This condition was not only known to the deceased, but that he had made efforts to remedy it, while the evidence of one or more of the seamen shows that the situation at the point where the deceased fell was a very dangerous one, with the lumber piled around the hatch combing, making it advisable, as one of the workmen said, to feel his way by crawling over the lumber. For the court, under the circumstances of this case, to hold that the proximate cause of the death of deceased was the failure of the ship to perform a duty which it owed the deceased, would not in my opinion be justified under the authorities. See The Susquehanna (D. C.) 176 F. 157, 160; Seas Shipping Co. v. Ward (C. C. A.) 22 F.(2d) 251, 252; Hardie v. New York Dry Dock Corporation (C. C. A.) 9 F.(2d) 545, 546; The Kongosan Maru (C. C. A.) 292 F. 801, 809; Jones v. Gould Steamship Company (D. C.) 300 F. 109, 112; affirmed (C. C. A.) 10 F.(2d) 792.